*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

HOWARD JOHN MCCARTER,

Defendant-Appellant.

UNPUBLISHED
March 19, 2020

No. 345648
Washtenaw Circuit Court
LC No. 17-000758-FH

Before: CAMERON, P.J., and SHAPIRO and LETICA, JJ.

PER CURIAM.

Defendant appeals his jury trial convictions of unlawful posting of a message, MCL 750.411s(2)(a), and stalking, MCL 750.411h. The trial court sentenced defendant to six months' jail and three years' probation. We affirm.

This case arises out of a series of unconsented contacts with Dr. Reuel Long initiated by defendant through several different mediums. Defendant and Dr. Long's daughter went through a contentious divorce. In November 2016, defendant stomped on the back of Dr. Long's leg as he was helping his daughter move out of defendant's home. The divorce became final in January 2017.

Dr. Long testified that in early 2017 he received a phone call from Webster Township regarding a letter it had received raising questions about taxes on property he had recently purchased for his daughter. Dr. Long obtained the letter and testified that it was unsigned and used a neighbor's return address. A few days later, a Washtenaw County employee informed Dr. Long that another letter, again using a neighbor's return address, had been received complaining that manure on the new property was contaminating Arms Creek. That complaint was unfounded. Dr. Long obtained the envelope used to send the letter and recognized defendant's handwriting.

In August 2017, Dr. Long began to receive numerous unwanted phone calls from reverse mortgage sales representatives. Dr. Long discovered that one of the callers obtained his information via Lending Tree, a company that sells information to third parties. Dr. Long testified that he never submitted his information to Lending Tree and that he continued to receive calls even after he asked to be removed from Lending Tree's database. Dr. Long believed that defendant had

provided his information to Lending Tree as the representatives knew information that only a family member would. Dr. Long had been uncomfortable since the assault and "didn't know what [defendant] was gonna do next."

Also in August 2017, Dr. Long and his wife returned home one night to find investigators from the Humane Society of Huron Valley on their property. Dr. Long and his wife owned miniature horses, cats, and a dog; there also were feral cats that visited the property. The investigators had received an online complaint asserting that the property owners had "obvious mental health issues" and were not properly caring for their animals. The complaint stated that there were "deplorable living conditions inside the barn and home with the home being worse than the barn." The complaint further asserted that the animals were so thin their bones were showing, they were bleeding and limping, were unable to stand, and had hair loss and excessive fleas. These allegations were determined to be unfounded by the Humane Society investigators. The defense admitted at trial that defendant was the author of the complaint.

Shortly after that incident, Dr. Long received a phone call from the Mayo Clinic regarding a request for an appointment submitted through the Internet. The request stated that Dr. Long had bipolar personality disorder, anti-social personality disorder, and narcissistic behavior. Dr. Long testified that he had not submitted an appointment request and that he did not suffer from any of those disorders. Dr. Long eventually obtained the Internet protocol address associated with the request, which law enforcement later traced to a City of Ann Arbor computer. Defendant was employed by the City of Ann Arbor, and it was determined that mayoclinic.org had been accessed two times from defendant's computer and password protected account on August 14, 2017.

Also, during this time, Jehovah's Witnesses visited and Dr. Long's home and called him regarding an online submission requesting to have a Bible study. Dr. Long testified that he did not submit that request, and he believed that defendant had initiated all of the aforementioned contacts.

At the close of the prosecution's proofs, the trial court denied defendant's motion for a directed verdict. On appeal, defendant argues that the trial court erred in denying his motion for a directed verdict and that there was insufficient evidence presented to support his convictions. We disagree. [1]

We will first address defendant's conviction under MCL 750.411s(1), which prohibits the following conduct:

> (1) A person shall not post a message through the use of any medium of communication, including the internet or a computer, computer program, computer

---

[1] We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When ascertaining whether there was sufficient evidence presented at trial to support a conviction, we view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "It is the function of the jury alone to listen to testimony, weigh the evidence and decide the questions of fact." *People v Palmer*, 392 Mich 370, 375; 220 NW2d 393 (1974).

system, or computer network, or other electronic medium of communication, without the victim's consent, if all of the following apply:

(a) The person knows or has reason to know that posting the message could cause 2 or more separate noncontinuous acts of unconsented contact with the victim.

(b) Posting the message is intended to cause conduct that would make the victim feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(c) Conduct arising from posting the message would cause a reasonable person to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(d) Conduct arising from posting the message causes the victim to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

Defendant argues that there was insufficient evidence presented to prove that he authored the Mayo Clinic appointment request. This argument overlooks that the prosecution may prove its case through circumstantial evidence and reasonable inferences arising from that evidence. See *People v Perry*, 317 Mich App 589, 599; 895 NW2d 216 (2016). Here, the prosecutor presented evidence that mayoclinic.org was accessed from defendant's work computer and username on at least two separate occasions. Furthermore, the appointment request to the Mayo Clinic contained personal information that only Dr. Long or someone who knew him well would know. This evidence was sufficient for the jury to reasonably infer that defendant was the one who accessed the Mayo Clinic website and submitted the request.

Defendant repeats this same argument—that the prosecution failed to prove that he was the one authored the message—with respect to the unwanted contacts Dr. Long received from Jehovah's Witnesses and the reverse mortgage sales representatives. Dr. Long testified that he did not submit a request for a Bible study to Jehovah's Witnesses or submit any information to Lending Tree, and these contacts occurred around the same time as the Humane Society and Mayo Clinic contacts. Further, Dr. Long testified that the reverse mortgage sale representatives had personal information about him that only a family member would know, and someone had obviously given Jehovah's Witnesses his address and phone number. Viewed in a light most favorable to the prosecution, there was sufficient evidence for a reasonable jury to infer that defendant was the one who contacted Jehovah's Witnesses and Lending Tree.[2]

Next, defendant argues that, with respect to the unwanted contacts from the Humane Society and the Mayo Clinic, the prosecution failed to prove that he knew or had reason to know

---

[2] We agree with defendant, however, that the prosecution failed to present sufficient evidence that he submitted an online message to a gun advocacy group that contacted Dr. Long. Dr. Long testified that he originally "suspected the [gun advocacy group contact] was" initiated by defendant, but he later determined that "it probably wasn't" defendant after all.

that the posting of the message could cause two or more acts unconsented contact with the victim. See MCL 750.411s(1)(a). Defendant focuses on the fact that Dr. Long was only contacted once by those entities. He acknowledges that the statute requires that unconsented contact "*could* occur" on two or more separate occasions, not *actually* occur. MCL 750.411s(1)(a) (emphasis added). However, he maintains that he would have had no reason to know that those entities would contact Dr. Long more than once. We disagree. Given the false request for a doctor's appointment, the jury could reasonably infer that defendant knew or should have known that the Mayo Clinic *could* have contacted Dr. Long on two or more separate occasions. As for the Humane Society, a supervisor testified that defendant's complaint alleged severe animal cruelty. The allegations were unfounded, but because of the overly exaggerated and inaccurate complaint, the jury could reasonably infer that defendant knew the complaint could result in more than one unwanted contact. Further, the messages to Lending Tree and Jehovah's Witness actually resulted in two or more unwanted contacts.

Defendant also argues regarding the Humane Society incident that the prosecutor failed to prove that he "intended to cause conduct that would make the victim feel terrorized, frightened, intimidated, harassed, or molested." MCL 750.411s(1)(b). As stated, the Humane Society complaint alleged severe animal cruelty. It also alleged that Dr. Long and his wife had mental health issues. Given these allegations, the jury could reasonably infer that defendant intended to harass Dr. Long by making the false complaint.

We next address defendant's argument that there was insufficient evidence presented to uphold the stalking conviction. MCL 750.411h(1)(d) provides that stalking is

> a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

"Course of conduct means a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." MCL 750.411h(1)(a) (quotation marks omitted). "Harassment" is defined as "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress." MCL 750.411h(1)(c).[3] Harassment does not include "conduct that serves a legitimate purpose." MCL 750.411h(1)(c).

Defendant argues that the prosecutor presented insufficient evidence to link defendant to the letters sent to Washtenaw County and Webster Township. However, Dr. Long testified that he obtained the letter to Washtenaw County and was able to identity the handwriting as defendant's, which was sufficient evidence for the jury to find that defendant sent the letter. The Webster Township letter was sent around the same time and also used a neighbor's return address.

---

[3] Defendant does not challenge whether unconsented contact as defined by MCL 750.411h(1)(e) occurs when the contact is from a third party.

Under the totality of the circumstances, it was reasonable for the jury to infer that defendant was the one who wrote the Webster Township letter.

Defendant also contends that the letter to Washtenaw County served a legitimate purpose. The Supreme Court defined "conduct that serves a legitimate purpose," as that term is used in MCL 750.411h, as "conduct that contributes to a valid purpose that would otherwise be within the law irrespective of the criminal stalking statute." *Nastal v Henderson & Ass'n Investigations, Inc*, 471 Mich 712, 723; 691 NW2d 1 (2005). Because Dr. Long testified that there were wood chip piles on his property, defendant maintains that it was reasonable to believe the wood chips were manure piles and that the complaint served a legitimate purpose. Taken alone, defendant's letter would have served a legitimate purpose if there were actual concerns about runoff contaminating a nearby creek. However, considering all the facts and circumstances, the jury could reasonably infer that no legitimate purpose existed and that defendant intended to harass Dr. Long.

Finally, defendant argues that the unconsented contacts did not cause Dr. Long to suffer emotional distress, which is defined as "significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." MCL 750.411s(g). Dr. Long testified that he was angered and disgusted by defendant's actions and that he was concerned "how far [defendant] was willing to go." Further, in considering the distress caused by the unwanted contacts, it must be remembered that Dr. Long was previously assaulted by defendant. Given those circumstances, we conclude that a reasonable jury could find that defendant caused Dr. Long emotional distress.

Affirmed.

/s/ Thomas C. Cameron
/s/ Douglas B. Shapiro
/s/ Anica Letica